IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CAROL LYNN GILES, individually
and on behalf of all other
persons similarly situated;
SHAWN H. DUNLAP, an individual;
CHERYL LEE FISCHER, an
individual; MELODIN CORNIS, an
individual; and MARY ANN ADLER,
an individual,

        Plaintiffs,

    v.

ST. CHARLES HEALTH SYSTEM, INC.,
an Oregon corporation, doing
business as PIONEER MEMORIAL
HOSPITAL, ST. CHARLES MEDICAL
CENTER - BEND, ST. CHARLES
MEDICAL CENTER - REDMOND, and
ST. CHARLES - MADRAS,

        Defendant.

Case No. 6:13-cv-00019-AA
OPINION AND ORDER

———————————————————

Roxanne L. Farra
Roxanne L. Farra, P.C.
17 N.W. Irving Avenue
Bend, Oregon 97701
    Attorney for plaintiffs

Page 1 - OPINION AND ORDER

Brenda K. Baumgart
John Baird Dudrey
Stoel Rives L.L.P.
900 SW Fifth Avenue, Suite 2600
Portland, Oregon 97204
    Attorneys for defendant

AIKEN, Chief Judge:

Plaintiffs Carol Giles, Shawn Dunlap, Cheryl Fischer, Melodin Cornis, and Mary Ann Adler move for class certification pursuant to Fed. R. Civ. P. 23. Defendant St. Charles Health System, Inc. opposes plaintiffs' motion. For the reasons set forth below, plaintiffs' motion is granted.

## BACKGROUND

Plaintiffs are employed as registered nurses at defendant's hospitals. Defendant requires its hourly nurses and certain other employees (collectively "caregivers") to fulfill training and certification requirements, which are not necessary to maintain an Oregon nursing license, as a condition of employment. In November 2010, Ms. Giles informed hospital management that it was unlawful not to compensate employees for this study and test-taking time. On December 2, 2011, Ms. Giles filed a small claims action against defendant. On December 28, 2011, defendant agreed, in writing, to begin drafting a policy pertaining to compensation for study and test-taking time, and to pay for Ms. Giles' 2011 certification tests; in exchange, Ms. Giles dismissed her complaint without prejudice.

Ms. Giles remained in contact with hospital management

Page 2 - OPINION AND ORDER

regarding defendant's payment practices between February 2012 and December 2012.  On December 5, 2012, Ms. Giles notified defendant that she consulted a labor lawyer regarding these practices.  On December 28, 2012, defendant issued a memorandum, entitled "Study and Test Taking Time," proposing to pay caregivers for their unpaid training time since January 1, 2011, "based on the two-year statute of limitations for overtime and premium pay actions in Oregon." Giles Decl. Ex. A ("Policy").  As a condition of payment, the caregiver was required to sign a "Study and Test Taking Time - Release Form," in which he or she stipulates to "hav[ing] been paid for all . . . hours spent studying and taking tests for certifications" and to "release all claims against St. Charles Health System in that regard."  Id. at Ex. C ("Release"). Additionally, caregivers were given the option to meet with defendant's human resources staff to discuss the new policy.

On January 4, 2013, Ms. Giles filed a putative class action in this Court, alleging that defendant violated the Fair Labor Standards Act and Oregon's labor laws. On February 22, 2013, Ms. Giles moved for an order requiring defendant to cease communications with potential class members regarding this lawsuit, the Policy, or the Release of any potential claims; she also moved to produce any documents obtained from putative class members. Thereafter, Ms. Dunlap and Ms. Fischer joined this lawsuit as named plaintiffs. On May 9, 2013, this Court denied Ms. Giles' discovery

request but otherwise granted her motion to limit defendant's communications with putative class members. On June 18, 2013, plaintiffs moved for class certification; the proposed class includes "[a]ll present and former hourly nurses and respiratory therapists who were employed by Defendant in Oregon and studied for, trained for, obtained, or renewed a BLS, ACLS, PALS, ENPC, NRP, TNCC, TEAM or S.T.A.B.L.E. certification between December 12, 2008 ([three] years preceding December 12, 2011) and the present." Compl. ¶ 23. Thereafter, Melodin Cornis and Mary Ann Adler joined this lawsuit as plaintiffs.

## STANDARD OF REVIEW

"Class certification is proper if plaintiffs show that they meet the requirements of Fed. R. Civ. P. 23(a) and also come within one of the provisions of 23(b)." Wilcox Dev. Co. v. First Interstate Bank, N.A., 97 F.R.D. 440, 443 (D.Or. 1983). The plaintiff bears the burden of establishing compliance with Fed. R. Civ. P. 23. See Zinser v. Accufix Research Inst., 253 F.3d 1180, 1186 (9th Cir. 2001)). Nonetheless, "[a] class may only be certified if [the court] is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." Hanon v. Dataproducts Corp., 976 F.2d 497, 509 (9th Cir. 1992) (citations and internal quotations omitted). As such, "district courts [have] broad discretion to determine whether a class should be certified, and to revisit that certification throughout the legal

Page 4 - OPINION AND ORDER

proceedings." <u>Armstrong v. Davis</u>, 275 F.3d 849, 871 n.28 (9th Cir. 2001), <u>cert. denied</u>, 537 U.S. 812 (2002), <u>abrogated on other grounds</u>, <u>Johnson v. California</u>, 543 U.S. 499, 504-05 (2005).

Under Fed. R. Civ. P. 23(a), the plaintiff must demonstrate that:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Under Fed. R. Civ. P. 23(b), the plaintiff must also prove, in relevant part, that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

## DISCUSSION

Defendant contends that plaintiffs' motion should be denied. Defendant first argues that Ms. Giles is not an adequate class representative because she did not execute a Release and her claims are "subject to a unique defense" pursuant to Or. Rev. Stat. § 12.220.[1] Def.'s Resp. to Mot. Class Cert. 7. Defendant also argues

---

[1] The Court notes that potential defenses are ordinarily considered when evaluating whether the plaintiff's claims are typical of the proposed class. <u>Compare</u> <u>Capps v. U.S. Bank Nat'l Ass'n</u>, 2009 WL 5149135, *5 (D.Or. Dec. 28, 2009) (discussing the adequacy requirement), <u>with</u> <u>Hanon</u>, 976 F.2d at 508 (discussing

that Ms. Giles' claims are not typical of caregivers who signed
Releases or former registered nurses.[2]  Lastly, defendant asserts
that plaintiffs cannot satisfy Fed. R. Civ. P. 23(b) because "the
putative class' claims can only be resolved with individualized
damages inquiries." Id. at 12-13 (citing Comcast Corp. v. Behrend,
133 S.Ct. 1426, 1433 (2013)).

I.    Numerosity

     Under Fed. R. Civ. P. 23(a), the proposed class must be "so
numerous that joinder of all members is impracticable." Fed. R.
Civ. P. 23(a)(1).  The size of a potential class is a key factor in
assessing numerosity because "where a class is large in numbers,
joinder will usually be impracticable." Jordan v. L.A. Cnty., 669
F.2d 1311, 1319 (9th Cir.), vacated on other grounds, 459 U.S. 810
(1982).  "[A]s a rough rule of thumb, approximately forty members
is sufficient to satisfy the numerosity requirement." Wilcox, 97
F.R.D. at 443 (citation and internal quotations omitted); see also

_____

the typicality requirement).

     [2] Defendant additionally contends that Ms. Giles' "claims are
not typical of St. Charles' caregivers who are not registered
nurses or respiratory therapists but who completed study or test-
taking time"; it therefore requests that Ms. Giles be limited to
"representing the St. Charles employees who completed one of the
eight courses she identified in her complaint."  Def.'s Resp. to
Mot. Class Cert. 9, 12.  According to plaintiffs, "[i]t was
always [their] intent to limit the class definition to current
and former caregivers of Defendant who completed one of the eight
(8) courses" outlined in the complaint.  Pls.' Reply to Mot.
Class Cert. 9.  Because the parties are in agreement as to this
issue, the Court need not address it further.

Or. Laborers-Emp'rs Health & Welfare Trust Fund v. Philip Morris,
188 F.R.D. 365, 372-73 (D.Or. 1998).

Defendant does not dispute that the numerosity requirement is
met in the case at bar. In fact, defendant admits that it "met
with approximately 500 caregivers regarding their study and test-
taking time . . . 450 [of which] reported unpaid study and test-
taking time." Defs.' Resp. to Mot. Class Cert. 4. Further,
plaintiffs estimate that, based on the Oregon Nurses Association's
purported membership, there are at least "849 nurses" who are
potentially affected by the challenged payment practice. Pls.'
Mem. in Supp. of Mot. Class Cert. 7 (citing Farra Decl. Ex. A).
Therefore, the putative class is sufficiently numerous to satisfy
Fed. R. Civ. P. 23(a)(1).

II.  Common Questions of Law or Fact

Fed. R. Civ. P. 23(a) requires that "there are questions of
law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This
provision "has been construed permissively [such that] [a]ll
questions of fact and law need not be common to satisfy the rule."
Hanlon, 150 F.3d at 1019. Instead, the "existence of shared legal
issues with divergent factual predicates is sufficient, as is a
common core of salient facts coupled with disparate legal remedies
within the class." Id.; see also Wal-Mart Stores, Inc. v. Dukes,
131 S.Ct. 2541, 2551 (2011) (in order to be common to the class,
the "claims must depend upon a common contention [and this

contention] must be of such a nature that it is capable of classwide resolution") (citation and internal quotations omitted). "The threshold requiremen[t] of commonality [is] not high." Sorenson v. Concannon, 893 F.Supp. 1469, 1479 (D.Or. 1994) (citation and internal quotations omitted).

Here, defendant does not dispute that the commonality requirement is fulfilled. Defendant subjected each putative class member to the same policies regarding test-taking and study time; this is precisely the payment practice at issue in this lawsuit. As a result, the potential class members' claims are governed by the same laws. See, e.g., Compl. ¶ 47 (listing applicable Oregon statutes common to the putative class' claims). Accordingly, plaintiff's claims present common questions of law and fact.

III. Typicality

Pursuant to Fed. R. Civ. P. 23(a), "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The claims "are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020. When assessing typicality, the court examines "the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." Hanon, 976 F.2d at 508. Like commonality, "[t]he threshold requiremen[t] of typicality [is] not high." Sorenson,

893 F.Supp. at 1479.


A.    Caregivers who Signed Releases

Defendant asserts that none of the representative plaintiffs "execute[d] the retro-pay forms reflecting their receipt of wages," such that their claims are not typical. Def.'s Resp. to Mot. Class Cert. 4 n.1. Plaintiffs argue, to the contrary, that Ms. Dunlap "signed the forms." Pl.'s Reply to Mot. Class Cert. 9 (citing Dunlap Decl.). Ms. Dunlap, however, does not specify in her declaration that she signed a Release form. Rather, Ms. Dunlap "refused to sign" the Release and, as such, has not been paid the wages that defendant concedes are due and owing. Dunlap Decl. ¶¶ 11-15. Therefore, as defendant notes, there is no evidence indicating that any of the named plaintiffs executed a Release and/or received wages.

This does not necessarily mean that typicality is lacking. Defendant previously represented to this Court that executing a Release would not affect a potential class member's ability to join in this action and obtain additional relief:

> If the caregivers believe they are entitled to liquidated damages under the FLSA or penalty wages under ORS Chapter 652 and 653 or that they are entitled to an additional year's worth of unpaid study time (as plaintiffs contend in this lawsuit), they are free to assert as much in litigation. If asked, St. Charles' representatives make clear that the caregivers' rights in the litigation will not be affected by their participation in the meetings.

Def.'s Resp. to Mot. Limit Commc'ns 8-9 (citations omitted); see

Page 9 - OPINION AND ORDER

<u>also</u> Answer ¶¶ 17-26 (pleading no Release-based defense).
Thereafter, defendant notified caregivers that "sign[ing] any type
of 'release' in regard to study and test-taking time . . . does not
prevent you from participating in the lawsuit to collect all
amounts due to you for your unpaid study and test-taking time."
Proposed Curative Notice 2.[3]

Therefore, because these Releases do not preclude putative
class members from pursuing claims akin to plaintiffs', they are
immaterial to the Court's analysis at this stage in the
proceedings. While defendant is correct that "putative class
members who executed the retro-pay forms and received their

_____

[3] The Court acknowledges that defendant now maintains these
Releases are legally binding, especially as to the putative class
members' state law claims, such that "the Court will have to
resolve the question of whether retro-pay forms are valid."
Def.'s Resp. to Mot. Class Cert. 5; <u>see also</u> <u>id.</u> at 6-7 ("[t]he
effect of the forms will be a key issue in this case, one that
bears not only on the absent class members' damages but in their
very right to recover relief under state law"). Defendant,
however, cannot obtain an advantage in these proceedings by
taking positions that contravene those previously asserted. <u>See</u>
<u>Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC</u>, 692 F.3d
983, 993 (9th Cir. 2012) (judicial estoppel "is an equitable
doctrine invoked not only to prevent a party from gaining an
advantage by taking inconsistent positions, but also because of
general considerations of the orderly administration of justice
and regard for the dignity of judicial proceedings, and to
protect against a litigant playing fast and loose with the
courts") (citations and internal quotations omitted); <u>see also</u>
<u>New Hampshire v. Maine</u>, 532 U.S. 742, 749-50, <u>reh'g denied</u>, 533
U.S. 968 (2001). Accordingly, the Court relies on defendant's
prior representation that executing a Release does not impact a
caretaker's ability to participate fully in this lawsuit.
Nonetheless, even assuming that these forms were binding, they
would not necessarily bar class certification; rather, the class
could be limited to those caregivers who did not sign a Release.

overtime wages cannot recover these amounts again in this litigation," additional damages may be recoverable due to defendant's allegedly willful violation of the law. See Compl. ¶¶ 40-41, 49-50. In other words, to the extent that different class members may be entitled to recover different amounts due, in part, to these Releases, this is a damage calculation issue and not a basis to deny class certification. See Hanon, 976 F.2d at 508.

B.   Former Caregivers

Defendant also contends that plaintiffs, as currently employed caregivers, have claims fundamentally different from those of former employees. Defendant relies on Or. Rev. Stat. § 652.150, which governs penalty wages, as the dispositive statute barring class certification. See Def.'s Resp. to Mot. Class Cert. 9 (plaintiffs' claims are not typical of "former registered nurses, who will assert final paycheck claims under ORS 652.150").

Under Or. Rev. Stat. § 652.150, an employer can be liable for willfully failing to pay: (1) wages due to an employee upon termination, as required by Or. Rev. Stat. § 652.140; or (2) overtime wages, as required by Or. Rev. Stat. § 653.261 and Or. Rev. Stat. § 653.055. Herb v. Van Dyke Seed Co., 2012 WL 4210613, *2 (D.Or. Sept. 19, 2012). Because plaintiffs allege the failure to pay regular and overtime wages under Or. Rev. Stat. § 653.261, for which they are seeking penalty wages, Or. Rev. Stat. § 652.150 is clearly applicable to the case at bar. See Compl. ¶¶ 47-50.

Defendant is correct, however, that former caregivers may also have a cognizable claim under Or. Rev. Stat. § 652.140, which governs final paycheck claims, whereas plaintiffs, as current employees, do not. Nevertheless, penalty claims arising from a defendant's failure to pay regular and overtime or termination wages are alternate theories of recovery. See Herb, 2012 WL 4210613 at *2-4. In other words, where premised on the same allegedly wrongful conduct, a plaintiff can receive a penalty for unpaid regular and/or overtime wages or unpaid wages due upon termination, but not both; in either instance, the amount of damages would be the same. See, e.g., Thiebes v. Wal-Mart Stores, Inc., 2004 WL 1688544, *10 (D.Or. July 26, 2004); see also Def.'s Resp. to Mot. Class Cert. 10 ("former registered nurses are not entitled to both final paycheck penalties under ORS 652.140 and unpaid overtime penalties under ORS 653.055 for the same wrong, namely, failure to pay for study and test-taking time") (emphasis omitted).

Here, Ms. Giles notified defendant that its payment practices were illegal in November 2010, over two years before defendant elected to institute a new policy and compensate caregivers for required study and test-taking time; during this period, some of the affected caregivers ended their employment. Regardless, it is undisputed that all of the claims in this case are based on the same employer misconduct, notably, the failure to provide

Page 12 - OPINION AND ORDER

compensation for certain certification requirements. See Armstrong, 275 F.3d at 868-69 (in cases involving a system-wide policy or practice, typicality exists if the proposed class members have injuries similar to those of the named plaintiff and "result[ing] from the same, injurious course of conduct"). Therefore, to the extent that plaintiffs are seeking to recover unpaid regular and overtime wages due to defendant's allegedly illegal payment practices, plaintiffs' claims are "reasonably co-extensive" with those of former caregivers. Hanlon, 150 F.3d at 1020. Thus, the typicality requirement is met.

IV. Adequacy

Under Fed. R. Civ. P. 23(a), "the representative parties [must] fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This factor requires: (1) that the proposed representative Plaintiffs do not have conflicts of interest with the proposed class, and (2) that Plaintiffs are represented by qualified and competent counsel." Capps v. U.S. Bank Nat'l Ass'n, 2009 WL 5149135, *5 (D.Or. Dec. 28, 2009) (citation and internal quotations omitted).

Initially, defendant does not dispute that plaintiffs are represented by qualified and competent counsel. See generally Def.'s Resp. to Mot. Class Cert.; see also Pls.' Mem. in Supp. of Mot. Class Cert. 10-11 ("counsel is a highly experienced employment litigator with significant trial experience, who has prosecuted and

defended employment law claims, to include wage and hour lawsuits, involving large, institutional employers, often opposing multi-lawyer teams from big, well-funded law firms like the one representing defendant in this action") (citing Farra Decl. ¶¶ 7-13). Accordingly, whether this element is met hinges on whether a conflict of interest exists between the named plaintiffs and the putative class.

A.    Caregivers who Signed Releases

Defendant asserts that plaintiffs are not adequate class representatives because they did not execute Releases. As discussed above, however, the Releases do not impact a caregiver's ability to participate in this lawsuit. In other words, plaintiffs share the same interests as the putative class members, even those who signed Releases, in that they all seek to recover damages stemming from defendant's failure to fully compensate its employees for required study and test-taking time.

In addition, plaintiffs represent that they "stand willing and able to zealously prosecute the litigation on behalf of the class." Pls.' Mem. in Supp. of Mot. Class Cert. 10. The record supports plaintiffs' assertion. For instance, Ms. Giles refused an offer from defendant to be compensated for study and test-taking time "from December 2, 2008, to present" because similarly-situated caregivers would only receive wages "from August 1, 2010, to present." Supplemental Giles Decl. Ex. A, at 11-13. Moreover, throughout this lawsuit, Ms. Giles and her counsel have

Page 14 - OPINION AND ORDER

appropriately pursued the potential class members' interests.  <u>See</u>
<u>generally</u> Pl.'s Mem. in Supp. of Mot. Limit Commc'ns (requesting an
order limiting defendant's prospective communications with putative
class members due to its false and/or misleading statements, which
this Court granted).  As such, no conflict of interest exists
between plaintiffs and those caregivers who signed Releases.

  B. <u>Existence of a Unique Defense</u>

  Defendant next contends that a conflict of interest exists,
such that Ms. Giles is not an adequate class representative,[4]
because she is subject to a unique defense under Or. Rev. Stat. §
12.220:

> The ordinary rule in class action practice is that the
> lead plaintiff's and the putative class' claims are
> commenced for statute of limitations purposes on the date
> the class complaint is filed . . . in the ordinary case,
> plaintiff's claims and the putative class' claims would
> be commenced on January 4, 2013, the filing date of this
> case. Plaintiff, however, seeks to use the filing date of
> the small claims court action as the date her and the
> class' claims were commenced . . . Plaintiff's attempt to
> do so makes her (but not the putative class) subject to
> a statute of limitations defense under ORS 12.220 because
> she voluntarily dismissed the small claims action.

Def.'s Resp. to Mot. Class Cert. 8.

  Thus, defendant is not, in fact, asserting that Or. Rev. Stat.

---

  [4] Defendant's argument ignores the fact that, at this stage
in the proceedings, several other plaintiffs have been named as
potential class representatives, none of whom are subject to this
alleged defense because they did not file a complaint in small
claims court.  <u>See</u> <u>Local Joint Exec. Bd. of Culinary/Bartender</u>
<u>Trust Fund v. Las Vegas Sands, Inc.</u>, 244 F3d 1152, 1162 n.2 (9th
Cir.), <u>cert. denied</u>, 534 U.S. 973 (2001) (the adequacy
requirement "is satisfied as long as one of the class
representatives is an adequate class representative").

§ 12.220, which provides for a tolling of the statute of limitations for certain "involuntarily dismissed" actions, is applicable to the case at bar. <u>See</u> Supplemental Giles. Decl. Ex. A, at 3; Def.'s Resp. to Mot. Class Cert. 7. While difficult to decipher, defendant's argument implies that portions of Ms. Gile's claims may be time-barred. Yet defendant does not provide any argument or evidence regarding the proper accrual date or limitations period for plaintiffs' action; instead, defendant merely contends that, due to Or. Rev. Stat. § 12.220, plaintiffs' claims "commenced" in January 2013 instead of December 2011.

Plaintiffs, however, did not rely on the relation-back period afforded by Or. Rev. Stat. § 12.220 in asserting that the "look back period should be measured from December 2011." Pls.' Reply to Mot. Class Cert. 6. Rather, Ms. Giles "relied on the representation made by management in delaying the filing of the suit" until January 2013.[5] Supplemental Giles Decl. Ex. A, at 12.

_____

[5] Specifically, the record reflects that Ms. Giles delayed filing suit because defendant represented, in December 2011, that it would effectuate a change to its payment practices concerning required study and test-taking time. Ms. Giles first notified defendant that failing to compensate employees for required study and test-taking time was unlawful in November 2010. <u>See</u> Giles Decl. ¶ 6. After defendant neglected to remedy this practice, Ms. Giles filed a small claims action in December 2011, which she only agreed to dismiss based on defendant's written agreement to begin drafting a policy to compensate employees for certain certification requirements; after over one year of constant communications, defendant still had yet to change its payment policy, such that plaintiff contacted an attorney and filed suit. <u>Id.</u> at ¶¶ 7-28; <u>see also</u> Supplemental Giles Decl. Ex. A, at 12 (Ms. Giles "relied on the representation made by management in delaying the filing of the suit," such that "SCMC has waived

Page 16 - OPINION AND ORDER

Thus, defendant's argument that Ms. Giles is subject to a unique defense pursuant to Or. Rev. Stat. § 12.220 is without merit. Plaintiffs are therefore adequate class representatives.

V.    <u>Predominance</u>

Fed. R. Civ. P. 23(b) mandates that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 623 (1997). As such, "[p]laintiffs need not establish that there are no individual issues, only that the class issues predominate and that a class action is superior." <u>Phelps v. 3PD, Inc.</u>, 261 F.R.D. 548, 559 (D.Or. 2009) (citations omitted). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." <u>Hanlon</u>, 150 F.3d at 1022 (citation and internal quotations omitted).

The predominance requirement is met in the case at bar. Contrary to defendant's assertion, this finding does not repudiate <u>Comcast</u>. Notably, <u>Comcast</u> can not be read as narrowly as defendant contends.    In <u>Comcast</u>, the Supreme Court considered class

and/or is estopped from claiming that the statute of limitations only runs back from when I filed suit").

certification for more than two million current and former Comcast subscribers who sought damages for purported violations of federal antitrust laws. Comcast, 133 S.Ct. at 1429-30. The Supreme Court held that Fed. R. Civ. P. 23(b)(3) was not met because the plaintiffs' model of damages fell "far short of establishing that damages are capable of measurement on a classwide basis"; while such "[c]alculations need not be exact" at the class-certification stage, "any model supporting a plaintiff's damages case must be consistent with its liability case, particularly with respect to the alleged anticompetitive effect of the violation." Id. at 1433 (citation and internal quotations omitted). As a result, the plaintiffs' motion for class certification was denied because the proposed damages model failed to "isolate damages resulting from any one theory of antitrust impact." Id. In other words, the inability to match a damages model with any one theory of liability was fatal to the class. Id. at 1433-35.

Thus, the Supreme Court's holding was based on the presumption, uncontested by the parties, that Fed. R. Civ. P. 23(b)(3) requires damages to be measurable based on a common methodology applicable to the entire class in antitrust cases. As such, nothing in Comcast indicates that this presumption is applicable to wage and hour claims under federal and state law. See, e.g., Harris v. comScore, Inc., 2013 WL 1339262, *11 n.9 (N.D.Ill. Apr. 2, 2013) (language in Comcast indicating that "damages must be measurable based on a common methodology

Page 18 - OPINION AND ORDER

applicable to the entire class . . . is merely dicta and does not bind this court") (citing Justices Ginsburg and Breyer, dissenting: "the decision should not be read to require, as a prerequisite to certification, that damages attributable to a classwide injury be measurable on a class-wide basis"). In any event, "[t]he Comcast decision does not infringe on the long-standing principle that individual class member damage calculations are permissible in a certified class under Rule 23(b)(3)." Munoz v. PHH Corp., 2013 WL 2146925, *24 (E.D.Cal. May 15, 2013); see also Leyva v. Medline Indus. Inc., 716 F.3d 510, 511-114 (9th Cir. 2013) ("damage calculations alone cannot defeat certification") (citation omitted).

For instance, in Leyva, a class action involving wage and hour claims under California law, the Ninth Circuit interpreted Comcast as requiring "that the plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability." Leyva, 716 F.3d at 511-14. As such, the Leyva court found Comcast to be distinguishable: "unlike in Comcast, if putative class members prove Medline's liability, damages will be calculated based on the wages each employee lost due to Medline's unlawful practices." Id. at 514. This conclusion was strengthened by evidence of record reflecting "Medline's computerized payroll and time-keeping database[,] [which] would enable the court to accurately calculate damages and related penalties for each claim." Id.

Other courts from within the Ninth Circuit have similarly held that Comcast does not act as a bar to class actions where the plaintiffs provide a workable damages model. See, e.g., Parra v. Bashas', Inc., 2013 WL 2407204, *32 (D.Ariz. May 31, 2013) (grocery store employees' model for calculating back pay survived Comcast: "through a computer program, and relying upon objective factors such as the individual employee payroll record (dates of employment job position, hours worked) and the wage scale, which is part of the record, the plaintiffs will be able to calculate back pay losses for each eligible class member") (citation and internal quotations omitted); see also In re Diamond Foods, Inc., Sec. Litig., 2013 WL 1891382, *11-12 (N.D.Cal. May 6, 2013); Munoz, 2013 WL 2146925 at *24-25; Barbosa v. Cargill Meat Solutions Corp., 2013 WL 3340939, *9-10 (E.D.Cal. July 2, 2013); but see Def.'s Resp. to Mot. Class Cert. 13 (citing Forrand v. Fed. Express Corp., 2103 WL 1793951, *4-5 (C.D.Cal Apr. 5, 2013); and Ginsburg v. Comcast Commc'ns Mgmt. LLC, 2013 WL 1661483, *7 (W.D.Wash. Apr. 17, 2013)).

This Court finds the reasoning in Leyva persuasive, especially because the relevant facts are analogous to the present case. The predominance inquiry will therefore be satisfied if plaintiffs: (1) can establish that their damages arise out of defendant's allegedly wrongful conduct; and (2) provide a methodology, even if "not fully developed", for calculating damages that are "capable of measurement on a classwide basis." Parra, 2013 WL 2407204 at *32 (quoting Comcast, 133 S.Ct. at 1433); see also Leyva, 716 F.3d at

Page 20 - OPINION AND ORDER

514.

One common question drives this lawsuit - i.e. whether defendant failed to pay current and former caregivers regular and overtime wages for required study and test-taking time, in violation of state and federal law. As discussed above, there are no significant individual issues presented. Further, it is undisputed that plaintiffs, along with the putative class members, were subjected to the same illegal payment practice. See generally Policy; see also Morgan Decl. ¶¶ 2-3. Defendant acknowledges that wages are due and owing as a result of this practice and that plaintiffs and the putative class are "similarly-situated." Id.; Supplemental Giles Decl. Ex. A, at 11. Critically, the amount of study and test-taking time for affected caregivers is easily ascertainable "by looking at the computerized 'Caregiver Transcript' that defendant maintains for each caregiver; its 'retro-pay' forms; or as a last resort, 'Table 1' in Defendant's 'Compensation for Study and Test Taking Time' policy listing 'the maximum hours that apply 'regardless of the number of times that a caregiver must take the certification test in order to pass it.'" Pls.' Reply to Mot. Class Cert. 11 (citation omitted).

In sum, if the potential class members prevail on the issue of liability, damages will be calculated based on defendant's computerized records reflecting the wages that each caregiver lost as a result of defendant's unlawful payment practice. See Leyva, 716 F.3d at 514. Accordingly, common questions of law and fact

Page 21 - OPINION AND ORDER

predominate over any individual issues.

VI.  <u>Superiority</u>

Pursuant to Fed. R. Civ. P. 23(b), certification is proper if "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resol[ution]." <u>Wolin v. Jaguar Land Rover N. Am., LLC</u>, 617 F.3d 1168, 1175 (9th Cir. 2010) (citation and internal quotations omitted). "The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case," which "necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." <u>Hanlon</u>, 150 F.3d at 1023 (citation omitted). "Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." <u>Wolin</u>, 617 F.3d at 1175 (citations omitted).

Here, it is in the class members' best interest to litigate their claims in a single action. Individual actions would entail increased expenses, duplication of discovery, and a potential for inconsistent results. <u>See Phelps</u>, 261 F.R.D. at 563; <u>Morelock Enters. v. Weyerhaeuser Co.</u>, 2004 WL 2997526, *5 (D.Or. Dec. 16, 2004). Specifically, class members would have "less litigation or settlement leverage, significantly reduced resources and no greater

Page 22 - OPINION AND ORDER

prospect for recovery" should they be required to individually litigate their claims. <u>Hanlon</u>, 150 F.3d at 1023. In fact, most class members would likely forego pursuing claims, since their individual damages are relatively small and litigating in federal court or elsewhere is costly.[6]

In addition, it would be far more time consuming for each individual putative class member to seek and compel discovery. For example, the same hospital administrators would need to be deposed numerous times regarding the same subject matter. Further, the parties would need to individually retain experts and/or litigate damages issues. For these reasons, courts often certify class actions when an employer's wage and hour practices similarly impact a large number of workers. <u>See, e.g.</u>, <u>Lerwill v. Inflight Motion Pictures, Inc.</u>, 582 F.2d 507, 512 (9th Cir. 1978). A class action is thus the most efficient and economical approach for pursuing the claims at issue. <u>See Amchem Prods.</u>, 521 U.S. at 615 (Fed. R. Civ. P. 23 exists to vindicate "the rights of groups of people who individually would be without effective strength to bring their opponents into court at all").

---

[6] While not dispositive, many of the putative class members are unlikely to bring individual actions because defendant led them to believe that they released any and all claims as a result of being compensated for two years of study and test-taking time. As plaintiffs allege, however, putative class members may be entitled to three, as opposed to two, years of back wages and further amounts for penalties or interest. Defendant's behavior further indicates that a class action would best serve the interests of the potential class members.

Moreover, "[p]laintiffs know of no related individual litigation pending elsewhere" and it is undisputed that concentrating the litigation in this forum is desirable. Pls.' Mem. in Supp. of Mot. Class Cert. 15; Def.'s Resp. to Mot. Class Cert. 15-16. Finally, "[a]lthough the proposed class will be large, Plaintiffs do not anticipate any serious problems managing this case as a class action [because] Defendant's payroll records and the transcripts for each caregiver showing the certifications taken are computerized and, as noted, Defendant has already identified the current caregivers entitled to unpaid study and test taking time from January 1, 2010, forward." Pls.' Mem. in Supp. of Mot. Class Cert. 15 (citing Farra Decl. Ex. C). To the extent that plaintiffs prove they are entitled to damages prior to January 1, 2010, the same process can be used to identify current and former caregivers and the wages due to them. Therefore, a class action is the superior vehicle.

**CONCLUSION**

Plaintiffs' motion for class certification (doc. 35) is GRANTED. The parties' requests for oral argument are DENIED as unnecessary.

IT IS SO ORDERED.

Dated this 22 day of October 2013.

_____
Ann Aiken
United States District Judge

Page 25 - OPINION AND ORDER