Roxanne L. Farra, OSB No. 901760
ROXANNE L. FARRA, P.C.
P.O. Box 5217
Bend, OR 97708
Tel     : (541) 385-3017
Fax     : (541) 330-1556
Email  : rfarra@bendbroadband.com

R. Kyle Busse, OSB No. 070994
BUSSE & HUNT
621 S.W. Morrison St., Ste. 521
Portland, OR 97205
Tel     : (503) 248-0504
Fax     : (503) 248-2131
Email  : kbusse@busseandhunt.com

      Attorney for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| **CAROL LYNN GILES**, et al., individually and on behalf of all other persons similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>**ST. CHARLES HEALTH SYSTEM, INC.**, an Oregon corporation, doing business as **PIONEER MEMORIAL HOSPITAL**; **ST. CHARLES MEDICAL CENTER - BEND**; **ST. CHARLES MEDICAL CENTER - REDMOND**; and **ST. CHARLES - MADRAS**,<br><br>      Defendant. | Case No. 6:13-cv-00019-AA<br><br>**DECLARATION OF ROXANNE L. FARRA IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT; MEMORANDUM IN SUPPORT THEREOF**<br><br>**CLASS ACTION ALLEGATION** |

      I, **ROXANNE L. FARRA**, hereby declare, under penalty of perjury, as follows:

      1.      I am the attorney of record for Plaintiffs in this class action, along with my co-counsel, R. Kyle Busse ("Busse").

      2.      This settlement was not hastily or casually reached.

PAGE 1 -      **DECLARATION OF ROXANNE L. FARRA IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT; MEMORANDUM IN SUPPORT THEREOF**

3.    The parties met for three (3) in person settlement sessions over a 15-month period before reaching any agreement: September 2014 in Bend; June 2015 in Eugene; and December 2015 in Bend.  The final session was held at the Riverhouse Convention Center in Bend to accommodate all of the participants.  These sessions were not brief encounters.  In September 2014, the parties met over two days; in June 2015, they met for seven (7) hours; and in December 2015, they met for more than nine (9) hours.

4.    For two (2) of their three (3) sessions, the parties engaged the services of U.S. District Judge Michael McShane to assist them in their efforts to resolve this action at arms-length.  After the parties reached an agreement in principal in December 2015, *numerous* disagreements arose between them, to include:

(a)    Allocation of the settlement funds and notice to the Class regarding the same;

(b)    Permissible methods for distributing/publishing notice of the Settlement;

(c)    Use of St. Charles' internal e-mail system to distribute the Class Notice and Claim Form to current employees;

(d)    The formula for determining when a Class Member would be paid penalty wages;

(e)    Whether shift and positional differentials would be added to each Class Member's "last hourly rate of pay" for purposes of calculating their Settlement Payment;

(f)    The Settlement Administrator's obligation to send periodic status reports to Class Counsel during the Notice Period;

(g)    Class Counsel's freedom to communicate with Class Members during the Notice Period, and ability to assist the Class Members with their Claim Form by submitting Accepted Verification Documents in Class Counsel's file in support of the Class Member's penalty request;

PAGE 2 -    **DECLARATION OF ROXANNE L. FARRA IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT; MEMORANDUM IN SUPPORT THEREOF**

ROXANNE L. FARRA, P.C.
P.O. BOX 5217
BEND, OR 97708
TEL (541) 385-3017 FAX (541) 330-1556

(h)     Class Member's access to their personnel records so as to obtain Accepted

Verification Documents required under the Settlement;

(i)     Class Members' opportunity to supplement their Claim Form to verify their

eligibility for a wage penalty;

(j)     The Settlement Administrator's obligation regarding verifying information

on a Class Member's Claim Form;

(k)     The scope of the release in the Settlement Agreement;

(l)     The deadline for the St. Charles to deposit the Net Settlement Fund with the

Settlement Administrator;

(m)    The tax treatment of each Class Member's settlement payment;

(n)     Class Members' ability to submit a W-4 Form to the Settlement

Administrator to fit their exemptions to their current tax situation; and

(o)     Whether uncashed settlement checks would revert to St. Charles, or be

deposited in the State of Oregon's Unclaimed Property fund so the Class

Member could later retrieve the funds.

5.      These issues were debated in lengthy submissions to Judge McShane, in which each

party fiercely advocated for and supported their point of view: e.g., May 3, 2016, e-mail from Class

Counsel to Judge McShane (7 pages); May 23, 2016, St. Charles' counsel to Judge McShane (14

pages); June 10, 2016, Class Counsel to Judge McShane (11 pages); October 27, 2016, Class

Counsel to Judge McShane (196 pages); November 30, 2016, Class Counsel to Judge McShane (70

pages); December 14, 2016, Class Counsel to Judge McShane (18 pages); December 15, 2016, e-

mail from Class Counsel to Judge McShane (4 pages); and February 9, 2017, Class Counsel to Judge

McShane (30 pages).

6.      Four (4) additional mediation sessions with Judge McShane were needed before these

issues were resolved, adding another 14 months to the parties' settlement negotiations, for a total

of nearly *two-and-one-half years* spent in this effort.

PAGE 3 -      **DECLARATION OF ROXANNE L. FARRA IN SUPPORT OF
              PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
              SETTLEMENT; MEMORANDUM IN SUPPORT THEREOF**

7.    This Court issued its preliminary approval order on May 4, 2017. Dkt. No. 149. Four (4) days later, my office mailed the court-approved press release to 342 media outlets in Oregon locales where a hospital is located.

8.    To prove they are entitled to unpaid regular wages, the Class Members would have to prove as a question of fact that they engaged in study time required to complete a mandatory certification during unpaid periods of time, *i.e.*, "off the clock." Likewise, in order to recover unpaid statutory overtime wages, Class Members would have to show that they engaged in required study time during weeks in which they worked more than 40 hours.

9.    Defense counsel has informed me that if this case were to proceed to trial, St. Charles would raise several factual arguments to undercut Class Members' contentions that they engaged in study time off the clock, including:

(a)    Whether Class Members engaged in study time during paid rest periods or during idle periods during their shifts;

(b)    Whether Class Members engaged in study time during a work week in which they worked more than 40 hours;

(c)    How much time Class Members devoted to studying for mandatory certifications;

(d)    Whether some portion of the time Class Members spent studying for a mandatory certification went beyond that amount necessary to pass the associated examination and was instead for the purpose of personal growth and development, which would not be compensable; and

(e)    Whether St. Charles' alleged failure to pay wages associated with study time was willful under ORS 652.150.

10.    The Settlement resolves these factual issues in the Class Members' favor. The Settlement accepts Class Members' sworn statements, without additional verification, that they engaged in study time during true "off the clock" periods; that if they worked full-time schedules

PAGE 4 -    **DECLARATION OF ROXANNE L. FARRA IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT; MEMORANDUM IN SUPPORT THEREOF**

ROXANNE L. FARRA, P.C.
P.O. BOX 5217
BEND, OR 97708
TEL (541) 385-3017 FAX (541) 330-1556

their study time was necessarily completed in work weeks in which they worked more than 40 hours, thus entitling them to an overtime penalty; that they took close to the maximum amount of time allowed under St. Charles' policy to study for the required certifications, irrespective of such variables as to whether the Class Member had taken the examination previously and was thus familiar with the material; that all such time was for the purpose of passing the examination; and that St. Charles' violation was willful.

11.     This litigation has already lasted just under five (5) years. If this case had not settled, the parties would have had to engage in significant additional discovery, including weeks, if not a month *or more,* of depositions. Both parties likely would have filed a summary judgment motion. Expert witness reports and discovery would have been required. There would have been St. Charles' presumptive motion for class decertification to deal with. A fact-intensive trial would be necessary. Preparing and putting on evidence at such a trial would consume a tremendous amount of time and resources and use substantial judicial resources. An appeal would be a likely outcome of a judgment resulting from continued litigation, no matter which party prevailed, further extending the duration of this case. These litigation steps would have been expensive, complex, and protracted. The settlement avoids these expenditures of resources for all parties and the Court, and gives the claimants certain and prompt relief.

12.     The Settlement Agreement provides that if this Court does not finally approve the Settlement, St. Charles' stipulation to certify this "as an FLSA collective action (but not the certification under FRCP 23) shall become null and void and have no further force and effect whatsoever." Dkt. No. 145-1, at 20, §3.11. While this provision would not effect the Rule 23 certification, were this litigation to proceed, St. Charles would likely make good on its promise to move to decertify the class at the close of discovery.

13.     While Plaintiffs are confident they would overcome such a challenge because all of the Class Members were subject to the same policy of non-payment, and a viable trial plan is available, the decertification proceedings would be long, expensive, and tiring for the Class

PAGE 5 -     **DECLARATION OF ROXANNE L. FARRA IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT; MEMORANDUM IN SUPPORT THEREOF**

Members, and there is always a risk the class would be decertified. Such a result would put all of the 1,102 caregivers who have elected to participate in the Settlement, and who upon approval will receive their unpaid study time and penalty wages (where applicable), in the unenviable position of starting over after five (5) years of litigation, and having to bring these complex and aging claims on their own behalf.

14.      The Gross Settlement Amount is $9.5 million for 3,770 Class Members. This recovery is *in addition* to the $305,300.02 in wages already paid by St. Charles outside of litigation to 458 caregiver-Class Members, as part of St. Charles' 2013 "Retro Pay" study. Just 15% of the total settlement payments in this case will go to pay regular wages. Eighty-five (85%) of the total settlement payments will go to pay penalties.

15.      It is not only the Gross Settlement Amount, but the amount that will *actually* be paid by St. Charles that supports final approval of the class action settlement in this case. No reversion to St. Charles will occur here. St. Charles will pay the *full* $9.5 million settlement. The reversion clause in the parties' agreement has been rendered irrelevant by all the money being claimed by the Class Members.

16.      Each claimant will receive **62%** of their potential gross recovery, all without having to produce documents, answer interrogatories, sit for depositions, overcome a motion to decertify the class, take time off from their new job, travel from the State or Country they now live in, confront their current or former employer at trial, win, then wait another two (2) years to be paid until a predictable appeal is completed, assuming a victory there, also. (Notably, this is about the percentage each class member could have expected to receive, after fees and costs, had they settled their claim, individually.) This settlement reaches back nearly 12 years, to 2006. Many of the claimants have retired. Some are in their 70's and even 80's. Many have moved to another State, or now live in a foreign country.

17.      Upon final approval by this Court, $6.365 *million* will be distributed to 1,102 claimants, for an average of $5,775.86 per class member. This level of distribution far eclipses other

PAGE 6 -      **DECLARATION OF ROXANNE L. FARRA IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT; MEMORANDUM IN SUPPORT THEREOF**

ROXANNE L. FARRA, P.C.
P.O. BOX 5217
BEND, OR 97708
TEL (541) 385-3017 FAX (541) 330-1556

wage and hour class action settlements found by the Oregon federal district court to be fair, adequate, and reasonable.

18.    **Exhibit 1** to this Declaration is a true and accurate copy of a press release posted by Bennett Hartman Morris & Kaplan, LLP on its firm website regarding the "approximately $2 million" class action settlement in Thanane v. Providence Health & Services - Oregon, USDC (Or.) Case No. 3:13-cv-01620-MO.

19.    Here, 1,102 claimants will receive far more than a fraction of their potential damages. What's more, they will receive not only their unpaid wages, but substantial amounts toward a 30-day wage penalty.

20.    This action commenced on January 4, 2013. The parties exchanged initial disclosures in March 2013. Dkt. No. 145 at 2, ¶3. I anticipated St. Charles would oppose extending the scope of discovery beyond Plaintiff Carol Lynn Giles ("Giles") and any opt-in Plaintiffs, absent class certification. To continue moving discovery along, on June 18, 2013, Plaintiffs filed their motion for class certification. Dkt. No. 35.

21.    While awaiting class certification, in July 2013, Plaintiffs served their First Set of Interrogatories and Requests for Production on St. Charles. Plaintiffs' Second Set of Interrogatories and Requests for Production of Documents were served on St. Charles in October 2013. On October 22, 2013, this Court granted class certification. Dkt. No. 53. Between January-September 2014, St. Charles produced 5,916 pages of documents and data relating to putative Class Members. The bulk of these documents consisted of an Education Record ("ER") for those employees believed to have completed the professional medical certifications at issue in this case between 2005-2013. Each ER is generally one page long. Also included were documents detailing the 458 caregivers who participated in St. Charles' 2013 "Retro-Pay" study, to include the "audit" form showing the certifications each completed in 2011 and 2012, the "Study and Test Taking Time Retro-Pay Calculation" for each, and the payroll checks paid to these individuals by St. Charles.

PAGE 7 -    **DECLARATION OF ROXANNE L. FARRA IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT; MEMORANDUM IN SUPPORT THEREOF**

ROXANNE L. FARRA, P.C.
P.O. BOX 5217
BEND, OR 97708
TEL (541) 385-3017 FAX (541) 330-1556

22.    During its June 2013 conference, the Court encouraged the parties to schedule a settlement conference with Judge McShane or another mediator.  See Dkt. No. 38.  Class action status having been granted, in early to mid-2014, the parties shifted their efforts from trial preparation to getting this case settled.

23.    **Exhibit 2** to this Declaration is a true and accurate copy of the status report submitted by the parties to the Court on September 26, 2014; January 5, 2015; and March 2, 2015.

24.    Thereafter, the parties worked to exchange necessary background data to provide the platform on which a settlement could be reached.  These efforts focused on the number of current and former employees impacted by St. Charles' non-payment (scope of Settlement Class).  As defense counsel noted in the parties' September 2014 status report, this work proved "to be an arduous process."

25.    Between May-July 2014, St. Charles amended its original, 164-page Class List four (4) times, in each instance due to errors and omissions identified by me and my Paralegal, Sara Hall ("Hall"), through informal discovery, via LEXIS, Facebook, LinkedIn, and other resources, to verify the accuracy of the information provided by St. Charles, and discover the identity of additional, potential Class Members whose name did not appears on St. Charles' class list.  Due to "various factors, including the need to sort out data issues," the parties postponed their July 2014 settlement conference with Judge McShane.

26.    Instead, in September 2014, the parties met in Bend for two (2) days for a "candid 'work session'," out of which was developed a "conceptual settlement framework."  Ten (10) sets of "action items" resulted from the work session; chief among them, for Plaintiffs' purposes: obtaining pay rates for putative Class Members; "[g]athering accurate hire/term dates"; and identifying employees who worked a "72-80" hour full-time equivalent ("FTE") schedule for purposes of a possible overtime penalty.  At the conclusion of the work session, the parties agreed to set their settlement conference for later in the year, to allow time to work through these critical issues and make further strides toward resolution before they met with Judge McShane.

PAGE 8 -    **DECLARATION OF ROXANNE L. FARRA IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT; MEMORANDUM IN SUPPORT THEREOF**

27.     On January 5, 2015, defense counsel updated the Court:

Ms. Farra and I continue to work together to prepare and exchange the supplemental background information necessary to position this case for settlement. We have kept in close contact and continue to work collaboratively through this process. We have been working through the action items identified in our prior settlement 'work session,' and we have retrieved the additional information from St. Charles' data systems. As with prior data gathering, because of the scope of data and various electronic systems, this is a time-consuming and difficult process. However, we are cautiously optimistic that we now have the remaining data needed, and are preparing this for production to Ms. Farra's office.

28.     On January 22, 2015, St. Charles produced a new Class List, according to defense counsel, "prepared by culling information from the NetLearning system about who completed one of the required certifications, then comparing that data against payroll and human resources records to determine information such as who was an employee, date of hire, date of termination (as applicable) and exempt status."

29.     **Exhibit 3** to this Declaration is a true and accurate copy of defense counsel's email to me transmitting the January 22, 2015 Class List.

30.     As a result of counsels' efforts, St. Charles' spreadsheet Class List ballooned from 164 pages to 388 pages.

31.     On June 10, 2015, the parties met with Judge McShane in Eugene for most of the day. No offer acceptable to Plaintiffs was made by St. Charles, and the case did not settle. Dkt. No. 121. At the end of the June 2015 settlement conference, the parties' counsel met in a conference room, and reviewed portions of St. Charles' Class Lists, specific to continued errors and gaps in the data needed to resolve the case.

32.     On June 16, 2015, I sent defense counsel a draft motion to compel, requesting an order allowing Plaintiffs to examine the personnel file of every individual on St. Charles' Class List to determine if the data provided for him or her was accurate.

33.     **Exhibit 4** to this Declaration is a true and accurate copy of the draft motion to compel that I sent to defense counsel. I have redacted identifying information in the document, to preserve the Class Member's privacy.

PAGE 9 -     **DECLARATION OF ROXANNE L. FARRA IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT; MEMORANDUM IN SUPPORT THEREOF**

34.     Before Plaintiffs' motion to compel was filed, a stipulation was reached between the parties, permitting Plaintiffs' counsel to review the personnel files.  For nine (9) days in August 2015, me; my co-counsel, Kyle Busse ("Busse"); Mr. Busse's wife and Oregon lawyer Emily Busse; and Ms. Hall, reviewed personnel files at St. Charles' Human Resources office, and marked pages to be copied, and produced to Plaintiffs.

35.     During the review, it was agreed that a member of St. Charles' HR staff would be tasked with reviewing the electronic records for every class member working at St. Charles-Bend and St. Charles-Redmond, and producing a spreadsheet detailing the class member's name; hire date(s); termination date(s) (if applicable); and job position(s), FTE status(es), and hourly pay status(es).  This spreadsheet ultimately became the 48 column, 55 page Personnel Record Review List, Exhibit 4 to the Settlement Agreement.  Plaintiffs' counsel reviewed the paper personnel files from Pioneer Memorial Hospital (now St. Charles-Prineville) and Mountain View Hospital (now St. Charles Madras).

36.     At the same time that Plaintiffs' counsel were pursuing the personnel files, on June 17 and June 22, 2015, Plaintiffs served St. Charles with Plaintiffs' First Requests for Admission to Defendant; Plaintiffs' Third Request for Production of Documents; and Plaintiffs' Second Requests for Admission to Defendant.  Between July 2 and July 20, 2015, St. Charles produced another 1,316 pages of documents in response to these discovery requests.

37.     On June 18, 2015, Plaintiffs served a subpoena on the Oregon Nurses Association ("ONA"), seeking the bargaining rosters provided to it by St. Charles, listing all persons who belonged to the union, who worked at St. Charles' three (3) unionized facilities (Bend, Redmond, and Prineville).

38.     Between September-November 2015, St. Charles produced the personnel file documents tagged by Plaintiffs' counsel the previous August; 11,395 pages in all.

/ / / / /

PAGE 10 -    **DECLARATION OF ROXANNE L. FARRA IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT; MEMORANDUM IN SUPPORT THEREOF**

39.    On October 2, 2015, Plaintiffs received the requested rosters from the ONA, covering 2006-2013.  (These 314 spreadsheets ultimately became the ONA List, Exhibit 3 to the Settlement Agreement.)

40.    The bargaining rosters detailed, for 2006-2013, the union class member's name, hire date(s), termination date(s) (where applicable), job position(s), pay rate(s), and FTE status(es).  This same information for other, non-union class members also appeared in the data due, apparently, to an unsuccessful attempt to unionize service workers at the hospital several years earlier.

41.    A September 24, 2015 settlement conference with Judge McShane, scheduled in August, was canceled on September 22, 2015, to allow time for Plaintiffs to receive the personnel records they had tagged during their review, as well as the records subpoenaed from the ONA.  Dkt. Nos. 126, 129.

42.    The parties subsequently set a second settlement conference with Judge McShane for December 11, 2015, at the Riverhouse Convention Center in Bend.  Dkt. No. 131.  Following more than nine (9) hours of vigorous, arms-length negotiations, this case settled for $9.5 million.

43.    The 20,000+ total pages of data ultimately obtained by my office, allowed me and Ms. Hall to complete a comprehensive analysis of prospective damages and an evaluation of the strengths and weaknesses of the Parties' respective claims and defenses prior to attending the final settlement conference.  We brought to the conference the 55 column, single-spaced spreadsheet I created for the 1,056 class members on the then Class List identified as "NonCPR Only," detailing each class member's name, employee number, job position, hire date, termination date (if applicable), pay rate, FTE status, remaining unpaid study time, previous overtime earnings (if available), "Retro" pay payment (if any), and potential 30-day wage continuation penalty (as payment for this group's unpaid study time wages was, by this point, not in dispute.)  We further brought with us to the conference, the 32 column, 338-page spreadsheet created by Ms. Hall for 1,863 class members identified on the then Class List as "CPR Only," detailing each class member's name, employee number, job position, hire date, termination date (if applicable), pay rate, FTE

PAGE 11 -    **DECLARATION OF ROXANNE L. FARRA IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT; MEMORANDUM IN SUPPORT THEREOF**

ROXANNE L. FARRA, P.C.
P.O. BOX 5217
BEND, OR 97708
TEL (541) 385-3017 FAX (541) 330-1556

C:\Users\User\Documents\Roxanne L. Farra, P.C\M779 - Giles, Carol\Giles - RLF Declaration (Final).wpd

status, and number of CPR classes taken and in what year (as payment for this group's unpaid study time wages was still in dispute.)

44.    St. Charles was represented in this lawsuit by me and Mr. Busse who, combined, have more than 34 years of expertise in litigating employment law cases.  Both of us have previously litigated against defense counsel in this case, to include a wage and hour class action specific to St. Charles, <u>Dusan-Speck v. St. Charles Health System, Inc.</u>, USDC (Or.) Case No. 6:13-cv-00358-AA. I have previously represented employment law clients in single plaintiff actions against St. Charles. I have been selected four (4) times as an Oregon Super Lawyer; Mr. Busse has been named an Oregon Super Lawyer Rising Star from 2008-present; honors reserved for the top 5% of the legal profession.  Both Mr. Busse and I support this Settlement as fair, adequate, and reasonable.

45.    In May 2013, this Court ordered St. Charles "to have no further communications with potential class members regarding this lawsuit" or the release St. Charles was requiring caregivers who participated in its "Retro Pay" study sign in order to receive their unpaid study time wages. Dkt. No. 30, Order at 5, 7.  This Court expressed concern, at the time, that the release "leads caregivers to believe that they have been paid in full and therefore makes it less likely that they will pursue any additional amounts." <u>Id</u>. at 5.  To guard against this result, at the beginning of the Notice Period, my office mailed a personalized letter to each of 423 "Retro Pay" employees (458 total, minus the 35 Opt-In Plaintiffs, who Class Counsel had direct contact with), advising each of their eligibility to participate in the Settlement, and that the release *did not* preclude them from receiving a settlement payment. Of 458 "Retro Pay" employees, 364, or *79.5%*, filed a Claim Form and, upon final approval, will receive a Settlement Payment.

46.    Seventy-three (73) Class Members (1.9%) of the 3,770 potential Settlement Class Members who were sent Notice, opted out of the Settlement.  I have analyzed the circumstances of this group, using the data available: 19 of the 73 had no qualifying classes and were thus ineligible to participate in the Settlement; another eight (8) had no ER, and likely did not qualify; another seven (7) are or were in management positions, and were likely exempt and thus not eligible to

PAGE 12 -    **DECLARATION OF ROXANNE L. FARRA IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT; MEMORANDUM IN SUPPORT THEREOF**

participate, or excluded themselves due to their position within St. Charles; another three (3) are American Heart Association ("AHA") instructors, and likely excluded themselves for that reason; and 21 are current employees, who may have been uncomfortable about filing a claim against their employer. Subtracting these 58 class members, results in total opt outs of 15, or just 0.39% of the total, potential Settlement Class Members.

47.    During the Notice Period, Ms. Hall and I met, spoke, texted, or e-mailed with, or reached out via telephone, text, or e-mail to, more than 740 Class Members. Their response to the Settlement was *consistently* positive, with many Class Members expressing their profound appreciation for Class Counsel's work, and their fellow co-workers' willingness to put their name to this case and oppose St. Charles.

48.    The Class Members were specifically advised in the Settlement Agreement posted on the Settlement web site my firm set up, that "[s]ubject to Court approval, the 51 Class Representatives and Opt-In Plaintiffs will receive a total Incentive Award in the amount of [($500,000.00)], to be divided evenly amongst them in the sum of $9,803.92 or $9,803.93, each, for their time, effort, and willingness to participate in and prosecute this Lawsuit, and achieve the Settlement." Dkt. No. 145-1 at 21, §4.2. The 3,770 Class Members sent the Class Notice were similarly advised that "[p]er the proposed Settlement, Plaintiff Giles and the 50 Opt-In Plaintiffs will each receive $9,803.92 or $9,803.93, for a gross Incentive Award of $500,000.00, for their time, effort, and willingness to participate in and prosecute this Class Action lawsuit, and achieve the Settlement." Dkt. No. 145-1 at 42, ¶4. *No objection* to the requested awards to be paid to the incentive award recipients was filed or voiced to Ms. Hall or me by the Class Members.

49.    No incentive arrangement was included in my retainer agreement with Ms. Giles, which is the only retainer agreement in this case.

50.    The incentive awards in this case *were not something Plaintiffs requested, or proposed*. They were conveyed as part of a settlement offer by Judge McShane. We have been

PAGE 13 -    **DECLARATION OF ROXANNE L. FARRA IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT; MEMORANDUM IN SUPPORT THEREOF**

ROXANNE L. FARRA, P.C.
P.O. BOX 5217
BEND, OR 97708
TEL (541) 385-3017 FAX (541) 330-1556

unable to discover if they were proposed by defense counsel, or the judge; but in any event, they were not proposed by Plaintiffs.

51.     The proposed recipients' acceptance of the incentive awards is not contingent upon their support of the Settlement.

52.     The proposed awards do not significantly exceed in amount what absent class members could expect to get upon settlement approval.  Nor will the awards be paid to individuals who are not proper members of the class.

53.     Far from selling out their fellow caregivers, the incentive award recipients in this case negotiated a settlement specifying that every class member was entitled to receive a settlement payment equaling *all* of his or her unpaid study time wages covering an eight (8) year period from 2006-2013, plus a *full* 30-day wage penalty (where applicable), calculated using his or her "last hourly rate of pay," to include all positional differentials.

54.     The 1,102 claimants in this case will receive a gross settlement award between $19.28 (for a single CPR certification in 2006) and *$26,920.48*.  Six hundred sixteen (616) of the 1,102 claimants, or 56%, receive a gross settlement award *greater* than the $9,803 incentive award proposed in this case.  Due to the amount available to distribute, the claimant's awards will be reduced in accordance with the pro rata reduction formula in the parties' Settlement Agreement. Dkt. No. 145-1 at 18, §3.6.9.  But even with this reduction, the claimants will receive between $11.95 (for the one, 2006 CPR certification) and *$16,690.69* each.

55.     At $9.5 million cash, the present settlement exceeds by $5 million the next closest wage and hour class action settlement in the Oregon federal district court that I can locate for a single action.  The $43.5 million class action settlement in <u>Poole v. Merrill Lynch, Pierce, Fenner & Smith</u>, USDC (Or.) Case No. 3:06-cv-01657-HA was larger, but it resolved 11 class actions from across the United States.

56.     The proposed incentive payment recipients provided Plaintiffs' counsel with insights into St. Charles' policies and practices; attended meetings and participated in telephone conferences

PAGE 14 -     **DECLARATION OF ROXANNE L. FARRA IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT; MEMORANDUM IN SUPPORT THEREOF**

ROXANNE L. FARRA, P.C.
P.O. BOX 5217
BEND, OR 97708
TEL (541) 385-3017 FAX (541) 330-1556

with counsel, to include a 1-hour teleconference in September 2016 to discuss and make a determination regarding St. Charles' proposal that the employer portion of the taxes on each Settlement Payment out of the Gross Settlement Amount; kept abreast of developments in the case; read regular status reports provided by Class Counsel; spoke with and provided information to co-workers about the case; discussed the case with their union (the ONA); responded to counsel's information requests; obtained and provided requested documents; reconstructed records and time lines for counsel; responded to discovery requests; reviewed pleadings, court documents and filings; and attended and assisted in two, long settlement conferences, one in Eugene and a second in Bend, the latter in the midst of a snow storm (for some recipients, both conferences required travel and an overnight stay, as they no longer live in Central Oregon).

57.     Vitally, each recipient did what the remaining 1,051 claimants were *not* willing to do; they placed something at risk by putting their name on a complaint against "Central Oregon's largest employer." https://www.stcharleshealthcare.org/About-Us/About-Us.  The gravity of this decision for these individuals and their families, and its importance to the success of this lawsuit, cannot be understated.  St. Charles owns and operates all four (4) hospitals in Bend, Redmond, Madras, and Prineville, as well as multiple outpatient clinics covering a 31,000 square mile service area in Deschutes, Crook, and Jefferson counties.

58.     I have been practicing law in Bend since 1996, and have represented numerous caregivers against St. Charles, so I am familiar with its termination procedures.  When an employee ends their employment, the employee is coded "eligible for rehire" or "not eligible for rehire." Employees coded "not eligible for rehire" have few options in Central Oregon for hospital-based employment.  In fact, none.  Four (4) of my last five (5) former St. Charles employee clients moved to another City in Oregon or to another State after their employment ended.  The fifth found work in Eastern Oregon, and commuted to it from Bend.  These moves are very disruptive, not just for the caregiver, but their family.

PAGE 15 -      **DECLARATION OF ROXANNE L. FARRA IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT; MEMORANDUM IN SUPPORT THEREOF**

59.    **Exhibit 5** to this Declaration is a true and accurate copy of St. Charles' personnel records reflecting the application of the "not eligible for rehire" classification. I have redacted identifying information in the document, to preserve the Class Members' privacy.  In the two attached instances, the caregiver was coded "not eligible for rehire" after being terminated for alleged "absenteeism/tardiness" and allegedly quitting "without Notice" due to "Job Dissatisfaction."

60.    **Exhibit 6** to this Declaration is a true and accurate copy of a letter Ms. Giles wrote to this Court.

61.    The Class Members, all of whom were employed at St. Charles, know better than anyone what the proposed incentive award recipients were up against in putting their names to this lawsuit.  Ultimately, the question for this Court in regard to the incentive awards is whether the named and opt-in Plaintiffs compromised the adequacy of the awards of prospective class members in order to obtain those awards.  Plaintiffs submit that the opinions of the Class Members, who have the most intimate knowledge of the risks undertaken by the recipients, should count the most.  3,770 current and former St. Charles' caregivers appear to agree that their awards are adequate, and that the recipients who identified themselves are well deserving of the incentive awards.  So, too, does Plaintiff Giles.

62.    Class Counsel's requested attorney fee of "25% of the Gross Settlement Amount ($2,375,000.00)" and "expenses not to exceed $60,000.00" were specified to the Class Members, both in the Class Notice sent to them by the Settlement Administrator, and in the Settlement Agreement posted on my firm's Settlement website. Dkt. No. 145-1 at 2-3, §2.7; at 22, §4.4.1; and at 42, §4. The Class Notice was sent to *3,770* potential Settlement Class members. The Settlement Agreement was available to be reviewed by anyone with Internet access. *No one* filed or voiced objection to Class Counsel's requested fees, or costs; a tacit nod of approval, we submit, for our unflagging efforts on behalf of the Class Members.

PAGE 16 -    **DECLARATION OF ROXANNE L. FARRA IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT; MEMORANDUM IN SUPPORT THEREOF**

63.    I have a written fee agreement with Ms. Giles, which provided for a one-third-40% contingency fee, depending upon when the case was resolved, if the case proceeded on an individual basis.  The agreement further specifies that if this case was resolved as a class action, "the benchmark for attorney's fees in Class Actions in the Ninth Circuit (which includes Oregon State) is Twenty-Five percent (25%) of the gross recovery, although attorney's fees have generally ranged from Twenty percent (20%) to *Thirty-Five percent (35%) or more*."  (Emphasis added.)  Class Counsel requests the "benchmark" rate of 25% of the common fund.  If this rate is approved, Class Counsel will not receive a disproportionate distribution of the settlement.  The Class will be paid *$4 million* more than Class Counsel.

64.    I am a solo practitioner.  My only Paralegal, Ms. Hall, and I have spent over 5,000 hours working on this case over a period of nearly *five (5) years*, with $0 compensation paid to my firm.  The assistance provided by co-counsel Busse and attorney Emily Busse adds another 131.59 and 28.75 hours, respectively.  My firm has also advanced all of the costs in this case, which are currently $40,491.85.  Upon final approval, Class Counsel will still not be paid, as there is a 61-75 day waiting period before payment is due.  Dkt. No. 145-1 at 3, §2.15 and 23, §4.5.2.  By the time my firm is paid, *more* than five (5) years will have elapsed. To give some perspective on this length of time: The Empire State Building was built in one (1) year and 45 days; the Seattle Space Needle in less than one (1) year.

65.    I have spent more than 2,660 hours working on this case; Ms. Hall, more than 2,372 hours, included in them:

    (a)    researching and drafting the 12-page Class Action Allegation Complaint, and reviewing St. Charles' answer and affirmative defenses to the same;

    (b)    meeting with and providing regular status updates to Giles and the opt-in Plaintiffs;

    (c)    researching and writing motions to stop St. Charles' improper and misleading communications with putative class members, and for class certification;

PAGE 17 -    **DECLARATION OF ROXANNE L. FARRA IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT; MEMORANDUM IN SUPPORT THEREOF**

ROXANNE L. FARRA, P.C.
P.O. BOX 5217
BEND, OR 97708
TEL (541) 385-3017 FAX (541) 330-1556

(d)    reviewing this Court's decisions regarding the same, and its other orders;

(e)    preparing the corrective notice ordered by this Court to be provided by St. Charles to all putative class members;

(f)    preparing initial disclosures, and preparing, serving, and responding to requests for production, requests for admission, interrogatories, and a subpoena;

(g)    analyzing St. Charles' initial, 164-page spreadsheet Class List;

(h)    five amendments to St. Charles' spreadsheet Class List, causing the List to expand to 388 pages, resulting from omissions and errors identified by Farra and Hall through formal and informal discovery;

(i)    communication with adverse counsel about discovery disputes, and drafting a detailed motion to compel;

(j)    multiple status reports to the Court;

(k)    stipulations between the parties;

(l)    nine days of in-person review of St. Charles' paper personnel files with co-counsel Busse and Emily Busse;

(m)    painstaking analysis of 20,000+ pages of records, to include 1,000s of pages of single-spaced spreadsheets;

(n)    careful and tedious creation of 55 and 32 column spreadsheets detailing more than 2,900 Class Members' potential, individual recovery to be used in the parties' settlement negotiations;

(o)    seven mediation sessions over a nearly two and one-half year period;

(p)    336   pages of factual and legal analysis prepared and submitted to the settlement judge;

(q)    drafting the Class Notice, Claim Form, and 30-page Settlement Agreement and 2,828 pages of exhibits;

PAGE 18 -    **DECLARATION OF ROXANNE L. FARRA IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT; MEMORANDUM IN SUPPORT THEREOF**

(r)      publishing the court-approved press release to 342 media outlets;

(s)      mailing personalized letters to 423 "Retro Pay" class members to ensure that they understood the "release" they signed did not prevent them from receiving a settlement payment;

(t)      mailing personalized letters to the <u>Dusan-Speck</u> class members to ensure they understood the release in that case did not prevent them from receiving a settlement payment in this one;

(u)      locating and mailing personalized letters to the likely legal representative of 12 class members discovered to be deceased, to ensure they received a claim package from the Settlement Administrator, and understood that their deceased loved one was entitled to file a Claim Form through his or her legal representative (six [6] claim forms were filed);

(v)      locating and mailing 1,222 personalized letters to Class Members whose employment with St. Charles terminated, and who in light of the amount of time since that date, had likely moved one more times, to ensure they timely received a claim package from the Settlement Administrator;

(w)      assisting the Settlement Administrator throughout the 90, then 120-day Notice Period; in particular, reviewing every proposed recipient of an "Additional Information" letter asking the Class Member for an "Accepted Verification Document" before the letter was sent out to identify letters that were proper to send, and those that were not because the Class Member's entitlement to a penalty was confirmed by the Personnel Record Review List and/or the ONA List;

(x)      for 117 of the Class Members for whom an "Additional Information" letter was appropriate, providing Accepted Verification Documents in my firm's files, or that I obtained via Facebook or LinkedIn or from reaching out to the

PAGE 19 -    **DECLARATION OF ROXANNE L. FARRA IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT; MEMORANDUM IN SUPPORT THEREOF**

Class Member, to the Settlement Administrator prior to the letter being sent, so the Class Member would receive his or her penalty without further effort;

(y)     analyzing and creating a detailed spreadsheet of all 1,292 claim forms filed with the Settlement Administrator to ensure Class Members who were entitled to a penalty, received it in the correct amount, and to identify "defects" that would result in the Claim Form being denied, e.g., missing pages, no signature, failure to check a box, no social security number;

(z)     finding contact information for the Class Members whose Claim Form contained "defects," the majority of whom failed to provide their e-mail address or phone number on their Claim Form, resulting in just one (1) Claim Form ultimately being denied due to a defect;

(aa)    meeting, speaking, texting, or e-mailing with, or reaching out via the same to more than 740 Class Members between May 2017 and the close of the Notice Period in response to phone calls or inquiries submitted through my firm's Settlement website; or to ensure they received and understood their Claim Form; to assist them in completing the same; or to correct "defects" on their submitted Form that might cause their claim to be denied;

(bb)    filing 157 original and amended Claim Forms for Class Members at their request; 92 original and 65 amended; and

(cc)    analyzing and ensuring needed corrections were made to the "Preliminary Award Calcs" presented by the Settlement Administrator.

66.     Class Counsel's work is not yet done; there will be more to do to finalize the Settlement between now and March 2018.  This does not count any time needed to be spent between March and August 2018 locating Class Members' whose settlement checks remain uncashed, to ensure they receive them.

PAGE 20 -      **DECLARATION OF ROXANNE L. FARRA IN SUPPORT OF
              PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
              SETTLEMENT; MEMORANDUM IN SUPPORT THEREOF**

67.     I have been an employment law specialist for 24 of the 28 years that I have been an Oregon lawyer. The first four (4) years of my legal career, I spent as law clerk to U.S. District Court of Oregon Magistrate-Judge William M. Dale (1989-1992) and Ninth Circuit Court of Appeals Judge Edward Leavy (1992-1993). Since then, I have litigated 70 cases, for the plaintiff or the defendant, before the federal trial and appellate courts in Oregon and Washington. I estimate the number of administrative and state court trial and appellate cases in which I have represented clients to be well over 300. I have represented employees, smaller companies, and large institutional employers, e.g., between 1993 and 2007, I represented Hewlett-Packard ("HP") in 16 employment cases before the trial and appellate courts.

68.     I was admitted to the U.S. District Court of Oregon and the Ninth Circuit Court of Appeals in 1993.

69.     In 1996, I moved to Bend and later established my law firm, Roxanne L. Farra, P.C. I believe HP's continued hiring of me to represent it in employment matters following my move to Bend and my change to solo practitioner reflects on the high quality of representation that I provided this client. While practicing in Bend, I have been selected four times as an Oregon Super Lawyer (reserved for 5% of the lawyers in this State). See Clark v. Bend-La Pine Sch. Dist., 2013 U.S. Dist. LEXIS 144643, *4 (D. Or. 2013) (evaluating my requested hourly rate against the 95th percentile of the Oregon State Bar economic survey). Presently, I am listed as one of only two Bend Employment & Labor attorneys named an Oregon Super Lawyer, the other being Tom Triplett, a Portland transplant to Schwabe, Williamson & Wyatt's Bend office.

70.     I served on the Oregon State Bar Business Litigation Section Executive Committee from 2000-2006. In 2003, I was selected by the Oregon federal district court judges to serve as a Lawyer Representative to the Ninth Circuit. I served as junior co-chair of the Oregon Lawyer Representatives during 2003-2004, and as senior co-chair in 2004-2005. I was a member of the Joint Pro Tem Screening Committee for the 11th and 22nd Judicial Districts from 2005 to 2014. In 2006, I was selected by then Chief Justice Mary Schroeder to serve on the Ninth Circuit's Public

PAGE 21 -     **DECLARATION OF ROXANNE L. FARRA IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT; MEMORANDUM IN SUPPORT THEREOF**

Information and Community Outreach (PICO) committee.  I served on that committee until 2007, when I was elected by my peers and selected by Chief Judge Schroeder to serve a three-year term as a member of the 12-lawyer Ninth Circuit Advisory Board.  For many years, I was a member of the J.R. Campbell Inns of Court.  I have presented numerous seminars and lectures on employment law topics over the years.

71.    I was lead Class Counsel in Dusan-Speck, another wage and hour class action, which recently resulted in a $950,000.00 settlement for 60 Home Health Care Department physical and occupational therapists and physical therapy assistants.

72.    In regard to other achievements: Following a 4-day jury trial in Cleese v. Hewlett-Packard Co., USDC (Or.) Case No. 3:94-cv-01253-ST, which I co-counseled with Dennis Gladwell from Gibson Dunn & Crutcher, the jury returned a verdict in favor of HP.  I represented the employee plaintiff in Johnson v. Deschutes County et al., USDC (Or.) Case No. 6:99-cv-06225-HO, which settled for a non-confidential sum of $585,000.00.  Following a 6-day jury trial, my employee clients in Olsen et al. v. Deschutes County, Deschutes County Cir. Ct. No. 00CV0624MA, were awarded $296,556.00.  Following a 4-day jury trial, my employee client in Mason v. Robinson, Deschutes County Cir. Ct. No. 02CV0185MA, was awarded $309,553.00.  Following an 8-day jury trial in Spaid v. 4-R Equipment, LLC, Deschutes County Cir. Ct. No. 06CV0275MA, my employee client was awarded $210,000.00.  I represented the employee plaintiff in Jennifer Beatty v. Crook County, Crook County Cir. Ct. No. 11CV0095, which settled for a non-confidential sum of $595,000.00.  I was lead counsel in Bush v. City of Prineville, et al., Crook County Cir. Ct. No. 14CV08987, bringing Mr. Busse in as co-counsel, which resulted in $916,702.00 in judgments in favor of our employee client.

73.    Mr. Busse is a partner in the Portland employment law firm of Busse & Hunt.  He has been an employment law specialist for ten (10) years.  Mr. Busse was my co-counsel in the Dusan-Speck class action, and the Bush lawsuit.  He has been selected as an Oregon Super Lawyer "Rising Star" from 2008 to the present.  Mr. Busse recently served as co-counsel for Cover Oregon's

PAGE 22 -    **DECLARATION OF ROXANNE L. FARRA IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT; MEMORANDUM IN SUPPORT THEREOF**

ROXANNE L. FARRA, P.C.
P.O. BOX 5217
BEND, OR 97708
TEL (541) 385-3017 FAX (541) 330-1556

C:\Users\User\Documents\Roxanne L. Farra, P.C\M779 - Giles, Carol\Giles - RLF Declaration (Final).wpd

Carolyn Lawson in her dispute with the State of Oregon, which settled for a non-confidential sum of $1.3 million.  He served as counsel for four former employees who sued the Columbia River People's Utility District, which also recently settled for a non-confidential sum of $1.3 million.

74.    **Exhibit 7** to this Declaration is a true and accurate copy of Mr. Busse's biography published on the Busse & Hunt website.

75.    **Exhibit 8** to this Declaration is a true and accurate copy of the section of the Oregon State Bar 2012 Economic Survey detailing hourly billing rates by total years admitted to practice for private practice lawyers.

76.    Per the Oregon State Bar 2012 Economic Survey, and particularly in light of our achievement in this case, and Dusan-Speck, Class Counsel believe this Court would be justified in awarding $450-470 per hour for the work I performed, and $369-428 per hour for the work performed by Mr. Busse.  Given the survey was published five (5) years ago, these rates would be low, unless adjusted for inflation. Using the United States Department of Labor's CPI Inflation Calculator (available at http://www.bls.gov/data/inflation_calculator.htm), see Bergen v. Tualitan Hills Swim Club, Inc., 2016 U.S. Dist. LEXIS 62252, at *10 (D. Or. 2016), my $470 per hour rate increases to $503.54 per hour, and Mr. Busse's $428 per hour rate increases to $458.54 per hour. This assumes that the generalized rates in the OSB survey, which included part-time and mostly unemployed attorneys, accurately portrays the rates paid to full-time counsel capable of handling this large class action.

77.    Case in point: Mr. Busse and I were opposed in this case by three (3) Stoel Rives attorneys:  Ms. Kitchel, Ms. Baumgart, and Mr. Dudrey.  Documents Kitchel filed nearly ten (10) years ago, in 2008, show her "guideline" rate at that time was $455 an hour, and her "specialist" rate, $490 per hour.

78.    **Exhibit 9** to this Declaration is a true and accurate copy of excerpts from Ms. Kitchel's Declaration filed on July 7, 2008 in Tyson v. Oregon Anesthesiology Group, P.C., USDC (Or.) Case No. 3:03-cv-01192-HA.

PAGE 23 -    **DECLARATION OF ROXANNE L. FARRA IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT; MEMORANDUM IN SUPPORT THEREOF**

79.    In 2008, Kitchel had been admitted to practice just under 27 years, or more than a year less than Ms. Farra has been, currently; yet, Kitchel was already charging $20.00 per hour *more* than the top rate in the 2012 survey for attorneys with 21-30 years of experience.  The specialist rate for paralegal Anne Lewis, then in her 3rd year with Stoel Rives, was $200 per hour, again in 2008.

80.    Pleadings filed in Schnitzer Steel Indus., Inc. v. Continental Casualty Co., USDC (Or.) Case No. 3:10-cv-01174-MO, show that by December 1, 2013, paralegals in the Stoel Rives firm were charged at $240-250.00 per hour.

81.    **Exhibit 10** to this Declaration is a true and accurate copy of excerpts from Mr. Kaplan's Declaration filed in Schnitzer Steel.

82.    Where their client was located does not seem to have effected the applicable rate. A 2015 agreement between Stoel Rives and the City of Bend sets a rate for attorney Eric A. Grasberger who, at the time, had been practicing just under 24 years, at $491 per hour.  Paralegal Katarina Nesslein, who completed her Legal Assistant/Paralegal course in 2013, and at the time of the Agreement, had worked as a Paralegal for *one (1) year*, was already being billed at $153.00 per hour.

83.    **Exhibit 11** to this Declaration is a true and accurate copy of a signed Personal Services Agreement Between the City of Bend and Stoel Rives LLP, dated September 2015, published on the Internet.

84.    **Exhibit 12** to this Declaration is a true and accurate copy of the resume information for Ms. Nesslein posted on LinkedIn.

85.    Ms. Hall has been my Paralegal for 16 years.  She is an *indispensable* member of my litigation team.  She received her Associate of Applied Science Degree/Paralegal from Western Business College in 2001, receiving awards for Outstanding Scholastic Achievement (3.96 GPA), Model Employee Paralegal, and Outstanding Student of the Term.  For the past 12 years, Ms. Hall has been my *only* Paralegal, and solely responsible for these tasks in the Dusan-Speck class action;

PAGE 24 -    **DECLARATION OF ROXANNE L. FARRA IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT; MEMORANDUM IN SUPPORT THEREOF**

this 3,770 member class action; the <u>Mason</u>, <u>Spaid</u>, <u>Beatty</u>, and <u>Bush</u> cases (<u>see</u>¶69, above); and all my other client matters.

86.     Emily Busse was brought in on a temporary basis to assist our team with the review of St. Charles' paper personnel files, so we could review more files in less time.  Ms. Busse is an attorney, having received her law degree from Pace University, and been admitted to the New York bar association in 2010.  At the time of her work in this matter, Ms. Busse was in inactive status with the Oregon State Bar, which she became a member of in 2007, and reinstated her license with in January 2016.

87.     **Exhibit 13** to this Declaration is a true and accurate of the website maintained by attorney Emily Busse.

88.     Adjusted for inflation using the United States Department of Labor's CPI Inflation Calculator, attorney Kitchel's 2008 specialist rate of $490 per hour becomes $549.82 per hour, in 2017.  The 2014 paralegal rate of $250 per hour, becomes $264.77 per hour.  Using $549.82 per hour for Farra; $458.54 per hour for Busse; and $264.77 per hour for Hall (Farra's Paralegal for 16 years) and attorney Emily Busse (who acted as a paralegal for purposes of this case), the lodestar in this $9.5 million class action settlement is $2,158,507.06, resulting in a multiplier of 1.1, *far less* than the long-recognized, reasonable range in this Circuit.

89.     More than two (2) years ago, Mr. Busse and I submitted a fee petition in <u>Bush</u>, a single plaintiff lawsuit in Crook County Circuit Court.  Even using the $350 per hour for me, $300 per hour for Busse, and $150 per hour for Ms. Hall awarded in that case (which counsel submit would be quite low in this massive class action, and now on the bring of 2018), and applying the $150 per hour rate to Emily Busse, the lodestar is $1,330,589.50, resulting in a multiplier of 1.78; again, *well* within the range recognized and approved as reasonable in this Court.

90.     The Settlement Agreement provides for actual and projected costs to be reimbursed to Class Counsel "in an amount not to exceed $60,000.00," "with any unspent and/or unbudgeted amount remaining for distribution to the Settlement Class[.]"  Dkt. No. 145-1 at 22, §4.4.1; <u>id</u>. at 2-

PAGE 25 -     **DECLARATION OF ROXANNE L. FARRA IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT; MEMORANDUM IN SUPPORT THEREOF**

3, §2.7. As I mentioned above, my firm has advanced all of the costs in this case which, to date, total $40,491.85.

91.    These expenses include: (a) filing fee; (b) copying and mailing expenses; (c) computer research expenses; (d) the cost of transcripts; (e) subpoena fees; (f) the cost of two rooms at the Riverhouse Convention Center (one for each party) for the final settlement conference; (g) creation and hosting of a Settlement web site, Dkt. No. 145-1 at 40; (h) factual investigation expenses; and (i) travel expenses.

92.    Plaintiffs expect additional costs of $6,500.00 between now and the anticipated end of this case in August 2018, to include continued hosting of the Settlement web site; preparation for and travel to and from the final approval hearing in Portland; copy, mailing, and telephone expenses; and computerized research costs for locating Class Members with uncashed settlement checks. See id. at 23, §4.5.3 ("No later than 60, 90, and 120 days after mailing, the Settlement Administrator shall provide Class Counsel with a report of any Settlement Payment checks that remain uncashed and/or not negotiated.")

93.    Plaintiffs thus ask this Court to award costs in the amount of $46,991.81, with the unused, budgeted balance of $13,008.19 distributed to the Settlement Class.

94.    The Settlement Agreement provides for up to $200,000.00 in Settlement Administration Fees and Costs, with any excess to be paid by St. Charles. Dkt. No. 145-1 at 26, §7. The Settlement Administrator reports that its fees and costs total $173,621.94, to date. Additional work by the Settlement Administrator will be required. The Settlement Administrator anticipates its fees and costs will equal $200,000.00 by the time this case ends in August 2018. Per the terms of the Settlement Agreement, Plaintiffs ask that this Court finally approve a payment to the Settlement Administrator out of the Gross Settlement Fund in the amount of $200,000.00, with St. Charles to pay any excess.

PAGE 26 -    **DECLARATION OF ROXANNE L. FARRA IN SUPPORT OF
PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
SETTLEMENT; MEMORANDUM IN SUPPORT THEREOF**

ROXANNE L. FARRA, P.C.
P.O. BOX 5217
BEND, OR 97708
TEL (541) 385-3017 FAX (541) 330-1556

95.     I hereby declare that the above statements are true to the best of my knowledge and belief, and that I understand they are made for use as evidence in court and are subject to penalty for perjury.

DATED: November 3, 2017.

 /s/ *Roxanne L. Farra*
Roxanne L. Farra, OSB No. 901760

PAGE 27 -    **DECLARATION OF ROXANNE L. FARRA IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT; MEMORANDUM IN SUPPORT THEREOF**